Peck, J.
delivered the opinion of the court.
It is insisted that the regularity of the judgment against the younger Walker cannot in this indirect manner be enquired into. / We admit the principle, that if the question was, whether the judgments in the attachments were erroneous, this court would not examine into them; butitis contended they are void for the want of jurisdiction in the tribunal that rendered them. ⅝ If the judgments be void, it may be important to enquire into that fact; because if it should so turn out that the property had by the acts of the elder Walker, been placed in such a condition that it would be subject to the judgment creditors of the younger Walker, then the fact of “judgment creditor” or not, would depend upon the question, whether or no these were void judgments. Against such judgments, possession of the property in the fiduciary character of administrator, would be sufficiently opposing to retain possession and defeat a sale.
In this view it may be important to ascertain the amount for which judgment may be given by a Justice of the Peace on an attachment.
The law of attachments in this State has always been considered as standing to itself. The practice under it has ever been taken with strictness; even jeofails seem in some measure to be excluded, for the forms are given in our act of 1794, and advantage expressly allowed if the act has been departed from. Courts therefore have not indulged in latitude of construction to sustain proceedings by attachment, because the proceedings are *72 ex parte in their character, and are liable to abuse, ^ Stewartvs. Roberts, at Jackson 1830. (a)
The act of 1794, ch. 1, sec. 20 to 25, inclusive, give the writ and the proceedings thereon, making the same returnable to court. The 56th section changes the forum before which the attachment may be returned, but confines it expressly to cases where a single Justice of the Peace has jurisdiction “by this act,” of 1794.
That subsequent laws extending the jurisdiction of a Justice, did not intend to take the attachment along with them, will be best seen by contrasting the proceedings. Where the jurisdiction of the Justice is to be exercised under the warrant process, there is personal service provided for the defendant: he may be held to bail for appearance,and summons for witnesses allowed; there is a trial, the words of the act being “may hear and determine;” stay of execution is given; and finally, the writ of execution against the goods or body of the defendant. See 1 Hay. and Cobbs’ Rev. Laws, 202, 203.
Recurring to the acts concerning attachments, it is impossible to say they are included in the acts extending jurisdiction, unless it be done by implication; and it isa rule that extension of jurisdiction, not according to the course of the common law, must be given by express provision, not by implication.
Other objections might be urged against these attachments and the judgments founded thereon. One of them at the suit of P. Anderson, is for the sum of $90 61; the form given in the act is not pursued; it is not made returnable either to court, or before a justice, and it is not under seal. The justice has given judgment against Walker for the sum of $90 61, without showing on what evidence the demand is founded, or that he is proceeding on the attachment.
*73 None of these attachments are undér seal of the justice, nor is there any oath in one case made by the ere-ditor, without which the attachment cannot issue. But it would be endless to go through them all pointing out their various objections. It is sufficient to say, that the process of attachment before a justice being a special and limited jurisdiction, ought to have been strictly pursued. In the amount demanded the justices have exceeded their jurisdiction; have rendered judgments which for the causes shown are void. On these the process of execution has issued, and been levied on the property mentioned in the bill. Can this court entertain the case to restrain the plaintiffs by injunction, and in that form remove the cloud from over the property? We are of opinion it can, and ought at the suit of these complainants, to restrain the inferior jurisdiction; because we are of opinion from the evidence, the property was a loan to the son; and though in the first instance the negro remained with him for the space of five years, ahd thereby became liable to creditors, who were such at the expiration of the term' of five years, yet before these defendants became such, except one of them, the property was revested in the complainant, who held the same as his own. As against his son, he could retain the property; neither time nor limitation operated for him, being a mere bailee.
When the father became possessed of the property the second time, and then parted with it, it was a new lending, and five years not having elapsed since such last loan, these creditors, even had they valid judgments, could not seize and sell this property. The decree must be reversed and the injunction made perpetual..
Decree reversed.'